[Cite as *State v. Caldwell*, 2011-Ohio-5429.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

THE STATE OF OHIO,

                Plaintiff-Appellee,

v.

CALVIN CALDWELL,

                Defendant-Appellant.

|   |   |
|---|---|
| : | JUDGES: |
| : | Hon. W. Scott Gwin, P.J. |
| : | Hon. William B. Hoffman, J. |
| : | Hon. Patricia A. Delaney, J. |
| : | |
| : | |
| : | |
| : | Case No. 2011-CA-0024 |
| : | |
| : | |
| : | |
| : | O P I N I O N |

CHARACTER OF PROCEEDING:         Criminal appeal from the Richland County
                                         Court of Common Pleas, Case No. 2010-
                                         CR-535H

JUDGMENT:                            Affirmed in part; Reversed in part and
                                         Remanded

DATE OF JUDGMENT ENTRY:       October 18, 2011

APPEARANCES:

For Plaintiff-Appellee                        For Defendant-Appellant

JAMES J. MAYER, JR.                   JAMES R. WILLIS
PROSECUTING ATTORNEY             420 Lakeside Place
BY: DANIEL J. BENOIT                323 W. Lakeside Ave. N.W.
38 South Park Street                   Cleveland, OH  44113
Mansfield, OH 44902

*Gwin, P.J.*

{¶ 1} Defendant-appellant Calvin C. Caldwell appeals from his convictions and sentences entered in the Richland County Court of Common Pleas for possession of crack cocaine in violation of R.C. 2925.11(A), a felony of the fifth degree. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶ 2} On August 4, 2010, Officer Terry Rogers of the Mansfield Police Department was patrolling a high drug area and observing a known drug house. As he was observing the house, Officer Rogers noticed a van driving down the street that did not have its taillights illuminated. The van had not come from the driveway of the particular house that was under surveillance; rather it was just passing through the area driving down the street. Officer Rogers did not observe anyone exit the home and enter or approach the van, nor did he observe anyone exit the van and approach the home.

{¶ 3} Officer Rogers initiated a traffic stop of the van based upon the taillight violation. Appellant was the driver of the van. Appellant was accompanied by one passenger, Larry Petty. Appellant was able to provide a valid driver's license to the officer; the passenger was not able to produce a valid driver's license, but did provide the officer with a social security number. Appellant informed Officer Rogers that the taillights were activated by a separate switch which appellant had forgotten to turn on. He did so, and Officer Rodgers indicated to appellant that if his information checked out, the officer would simply issue appellant a warning citation. As Officer Rogers was running appellant's and

his passenger's information through the computer system, Officer Phil Messer, Jr. arrived at the traffic stop to assist Officer Rogers.

{¶ 4} Mr. Petty was found to have an active felony warrant for failure to appear[1]. Officer Rogers removed Mr. Petty from the van. Officer Messer initiated his contact with appellant. As Officer Messer spoke with appellant, appellant began looking around the vehicle and moving his hands around a lot. The officer decided to remove appellant from the vehicle.

{¶ 5} Officer Messer immediately initiated a pat-down search of appellant, at which time the officer noticed something large in appellant's pocket. Officer Messer asked appellant what was in his pocket. Appellant informed him that it was cash. Officer Messer asked appellant if he had anything else in his pocket. Appellant responded he did not think he did have anything else in his pocket. Appellant informed Officer Messer that he had just been released from jail and that he had a receipt from the jail for the cash. Officer Messer asked appellant if he, Officer Messer, could reach into appellant's pocket and retrieve the cash. Appellant said yes. Officer Messer retrieved the cash but did not count it at that time. Officer Messer asked appellant where he got the money. Appellant told Officer Messer that he had a receipt for the cash inside the van.

{¶ 6} Officer Rogers went to the van to retrieve the receipt. As he approached the passenger side of the vehicle and looked inside he saw a baggie lying in the console area of the van. When he picked up the baggie, Officer Rogers observed a

---

[1] Neither officer was able to testify as to the underlying charge.

small amount of what he believed to be crack cocaine inside the baggie[2]. The receipt for the cash was located underneath the baggie. Appellant was arrested.

{¶ 7}   Appellant was indicted by the Richland County Grand Jury in September, 2010 for one count of Possession of Crack Cocaine, a schedule II narcotic, in violation of R.C. 2925.11(A), a felony of the fifth degree.  Appellant filed a motion to suppress on November 3, 2010.  A hearing was held on December 22, 2010.  By Judgment Entry filed December 22, 2010 the trial court overruled the motion.

{¶ 8}   A two day jury trial commenced on January 24, 2011.  The jury found appellant guilty of Possession of Crack Cocaine on January 26, 2011.

{¶ 9}   Appellant has timely appealed raising the following assignments of error,

{¶ 10}  "I. THE COURT ERRED WHEN IT DENIED THE DEFENSE'S MOTION TO SUPPRESS, AND THUS FAILED TO EXCLUDE CERTAIN EVIDENCE SEIZED IN VIOLATION OF RIGHTS GUARANTEED THE ACCUSED BY THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶ 11}  "II. THE COURT ERRED AND DUE PROCESS WAS VIOLATED WHEN THE COURT FAILED TO ORDER THE RETURN OF ALL MONIES THAT HAD BEEN UNCONSTITUTIONALLY SEIZED FROM THE ACCUSED.

{¶ 12}  "III. ASSUMING THE COURT DETERMINED A VOLUNTARY CONSENT TO SEARCH WAS GIVEN, THE COURT ERRED, AND THE ACCUSED WAS DENIED DUE PROCESS, IN THE WAKE OF THE COURT SO RULING.

{¶ 13}  "IV. GIVEN THE EVIDENCE HERE IS INSUFFICIENT TO SUPPORT ANY FINDING OF GUILT BEYOND A REASONABLE DOUBT, IT FOLLOWS THE

---

[2] Officer Rogers field tested the substance confirming his suspicion that the substance was indeed crack cocaine.

COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL MADE AT THE CLOSE OF ALL THE EVIDENCE."

## I. & III.

{¶ 14} In his First Assignment of Error, appellant cites as error the trial court's decision to overrule his motion to suppress the evidence. In his Third Assignment of Error appellant argues that any consent to search given by appellant was the result of an illegal search and seizure of his person before the consent was obtained. Appellant's First and Third assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

{¶ 15} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 797 N.E.2d 71, 74, 2003-Ohio-5372 at ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside*, supra; *Dunlap*, supra; *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1; *State v. Medcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. However, once this court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside*, supra, citing *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539; See, generally, *United States v. Arvizu* (2002), 534 U.S. 266, 122 S.Ct. 744; *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct.

1657. That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

{¶ 16} In the case at bar, the appellant does not challenge that the van which appellant was driving was lawfully stopped for a traffic violation.

{¶ 17} A. Prolonged stop.

{¶ 18} Appellant first contends that the lawful detention for the equipment violation became an unlawful detention when the officers continued to detain appellant after arresting the passenger.

{¶ 19} "'[W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or a warning.'" *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, at ¶ 12. (Quoting *State v. Keathley* (1988), 55 Ohio App.3d 130, 131). "This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. Further, [i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation. *State v. Batchili*, supra. (Internal quotation marks and citations omitted).

{¶ 20} However, "[a]n officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot." *Batchili, supra* 113

Ohio St.3d 403, 2007-Ohio-2204 at ¶ 15. (Citing *State v. Howard,* Preble App. Nos. CA2006-02-002 and CA2006-02-003, 2006-Ohio-5656 at ¶ 16). "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci,* 11th Dist. No.2001-L-205, 2003-Ohio-702, ¶ 30, citing *State v. Bobo* (1988), 37 Ohio St.3d 177, 178.

{¶ 21} In the case at bar, the record check of appellant's passenger revealed an outstanding warrant. Thus, the stop was lawfully prolonged by the resulting arrest of the passenger.

{¶ 22} B. Ordering appellant out of the van.

{¶ 23} Recently, in *Arizona v. Johnson* (2009), 555 U.S. 323, 129 S.Ct. 781, the United States Supreme Court noted, "[t]hree decisions cumulatively portray *Terry*'s application in a traffic-stop setting… In [*Pennsylvania v.*] *Mimms,* [434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 *(per curiam)*]*,* the Court held that 'once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment,' Id*.* at 111, n. 6, 98 S.Ct. 330, because the government's 'legitimate and weighty' interest in officer safety outweighs the '*de minimis'* additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle, Id*.,* at 110-111, 98 S.Ct. 330…[*Maryland v.*] *Wilson,* [519 U.S. 408, 414, 117 S.Ct. 882] held that the *Mimms* rule applies to passengers as well as drivers, based on 'the same weighty interest in officer safety…' *Brendlin [v. California,* 551 U.S. 249, 263, 127 S.Ct. 2400,] held that a passenger is seized, just as the driver is, 'from the moment [a car stopped by the police comes] to a halt on the side of the road.' A passenger's motivation to use violence during the stop to prevent apprehension

for a crime more grave than a traffic violation is just as great as that of the driver. 519 U.S., at 414, 117 S.Ct. 882. And as 'the passengers are already stopped by virtue of the stop of the vehicle,' Id*.,* at 413-414, 117 S.Ct. 882, 'the additional intrusion on the passenger is minimal,' Id*.,* at 415, 117 S.Ct. 882. Pp. 786 - 787." *Arizona v. Johnson*, supra, 555 U.S. 323, 129 S.Ct. at 786-787.

{¶ 24} Accordingly, under the facts of this case we find Officer Messer's request that appellant exit the van to be lawful.

{¶ 25} C. The pat-down of appellant.

{¶ 26} Authority to conduct a pat-down search does not flow automatically from a lawful stop; a separate inquiry is required. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889*.* The Fourth Amendment requires that an officer have had a "reasonable fear for his own or others' safety" before frisking. *Terry* at 30, 88 S.Ct. 1868, 20 L.Ed.2d 889. Specifically, "[t]he officer ... must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Sokolow* (1989)*,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868). Whether that standard is met must be determined from the standpoint of an objectively reasonable police officer, without reference to the actual motivations of the individual officers involved. *United States v. Hill* (D.C.Cir.1997)*,* 131 F.3d 1056, 1059 (quoting *Ornelas v. United States* (1996)*,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911). [Internal quotation marks omitted].

{¶ 27} The frisk, or protective search, approved in *Terry* is limited in scope to a pat-down search for concealed weapons when the officer has a reasonable suspicion

that the individual whose behavior he is investigating at close range may be armed and dangerous. *Terry,* supra*,* 392 U.S. at 27, 88 S.Ct. at 1883.

{¶ 28} The Court of Appeals for Montgomery County has observed,

{¶ 29} "Intertwined with the reasonableness requirement is the other requirement of *Terry* that the officer's suspicion must be articulable. That connotes more than a mere subjective pronouncement. It requires demonstrable facts that, together with any rational inferences that may be drawn from them, reasonably support a conclusion that the suspect is armed and dangerous. The conclusion is necessary to the independent judicial review that a Fourth Amendment challenge to a pat-down search involves. In that connection, *Terry* states:

{¶ 30} "'Nothing we say today is to be taken as indicating approval of police conduct outside the legitimate investigative sphere. Under our decision, courts still retain their traditional responsibility to guard against police conduct which is overbearing or harassing, or which trenches upon personal security without the objective evidentiary justification which the Constitution requires. When such conduct is identified, it must be condemned by the judiciary and its fruits must be excluded from evidence in criminal trials.' Id. at 15, 88 S.Ct. 1868, 20 L.Ed. 2d 889." *State v. Phillips,* 155 Ohio App.3d 149, 799 N.E.2d 653, 2003-Ohio-5742 at ¶23-24.

{¶ 31} In the case at bar, the state seeks to justify Officer Messer's *Terry* pat-down of appellant on the basis of officer safety. The state contends the officer's decision was justified based upon the following factors: 1). the area's reputation for crime and drug activity; 2). the passenger's arrest warrant; and 3). the appellant's nervousness and gesturing.

{¶ 32} 1). High crime area.

{¶ 33} Although a factor under proper circumstances, the fact that the area may be characterized as a "high crime" area cannot furnish a reasonable suspicion when the activities of the individuals as observed by the police are themselves unexceptional. *Brown v. Texas* (1979), 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357, 362–363; *State v. Carter*, 69 Ohio St.3d 57, 65 630 N.E.2d 355, 362, 1994-Ohio-343.

{¶ 34} In the case at bar, the record clearly reveals that neither officer observed either of the occupants of the van have any contact with any individual at or near the home that was under observation for suspected drug activity. The van was simply driving down a public street. Mere presence in an area of "high crime" does not suspend the protections of the Fourth Amendment and Article I, Section 14 of the Ohio Constitution. Thousands of people live and go about their legitimate business in neighborhoods designated as high crime areas by the police. *In re D.J. (*D.C. App. 1987), 532 A.2d 138, 143. "To hold otherwise would result in the wholesale loss of the personal liberty of those with the misfortune of living in a high crime area." *State v. Carter,* supra*.*

{¶ 35} In the case at bar, the van was stopped for an equipment violation. Standing alone, those facts involved nothing which in any way suggests a potential for violence or that appellant might be armed. However, the nature of the area can when combined with other factors support a reasonable suspicion to investigate.

{¶ 36} 2). Passenger's arrest warrant

{¶ 37} The state next argues that the fact that the passenger had a felony warrant for failure to appear provided an additional factor justifying appellant's pat-down.

{¶ 38} Neither officer was able to testify as to the specific nature of the passenger's arrest warrant. Officer Roger's testified,

{¶ 39} "At the time I still—I don't think I still know.  It was just a felony warrant for failure to appear or something…" (Supp. T., December 22, 2010 at 17).

{¶ 40} In the case at bar, the record check of appellant did not return any information that led either of the officers' to believe that he might be armed or dangerous. Appellant was properly licensed and the vehicle was properly registered. The passenger was removed from the vehicle, placed under arrest and placed inside a police car.

{¶ 41} A person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. *Sibron v. New York* (1968*)*, 392 U.S. 40, 62–63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917*;* *Ybarra v. Illinois* (1979), 444 U.S. 85, 91, 100 S.Ct. 338, 342. In the case of [a] self-protective search for weapons, [an officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.*" Sibron* at 64, 88 S.Ct. 1889. Such facts, the court held, plainly were not present. Id.

{¶ 42} However, in the case at bar, appellant was seated inside a motor vehicle with an individual who had an active felony warrant. Given the close confines, we do

not find it unreasonable for the Officers to ensure their safety by patting down each individual inside the vehicle.

{¶ 43} 3). Furtive gestures

{¶ 44} The state argues that appellant's failure to look at the officer and his motioning with his hands constituted a furtive movement which when taken with the other factors justified Officer Messer's fear for his safety.

{¶ 45} In *State v. Bobo* (1988), 37 Ohio St. 3d 177, 182, 524 N.E. 2d 489, the Ohio Supreme Court found a furtive movement is a factor which may contribute to an officer's reasonable suspicion a suspect is armed or engaged in criminal activity. Id. However, in *Bobo,* the Supreme Court relied upon several reasons to justify the officer's belief the defendant therein was armed and presently dangerous. Id. at 180-183, 524 N.E. 2d 489. The instant case is distinguishable from *Bobo* because the officer testified that appellant only became upset after he was told to exit the van. This was after Officer Rogers had earlier informed appellant he would in all probability receive only a warning citation for the taillight violation.

{¶ 46} "A change of temper is consistent with *Terry*'s observation about pat-down searches: that even such a limited bodily search nevertheless 'constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience.' Id. at 24–25, 88 S.Ct. 1868, 20 L.Ed. 2d 889. Police ought not assume that subjects should submit to that gladly." *Phillips,* supra 155 Ohio App.3d 149, 799 N.E.2d 653, 2003-Ohio-5742 at ¶ 27. Further, as this court has observed,

{¶ 47} "The courts in this State have held such general claims of furtive movement, standing alone, insufficient to render an officer's suspicions about criminal activity or the possession of weapons reasonable. *State v. Chandler* (1989), 54 Ohio App.3d 92, 97, 560 N.E.2d 832; *State v. Bird* (1988), 49 Ohio App.3d 156, 551 N.E.2d 622; *State v. Jackson* (1989), 52 Ohio App.3d 156, 157; *State v. Harris* (1987), 36 Ohio App.3d 106, 521 N.E.2d 835; and *State v. Armstrong* (1995), 103 Ohio App.3d 416, 659 N.E.2d 844.

{¶ 48} "In order to justify a search for weapons, an officer needs not testify he was actually in fear of a suspect, but he must articulate a set of particular facts which would lead a reasonable person to conclude a suspect may be armed and dangerous. *Evans,* supra, at 170; *State v. Burkett* (April 28, 1989), Lucas App. No. L-88-174, unreported. If an officer provides no reason for his pat down search, or the totality of the circumstances contradicts the officer's claim, the search is unjustified. Id. Professor Lewis Katz articulated the need to carefully review claims of furtive movement, stating:

{¶ 49} "* * * some such claims [of furtive movement] are known to be entirely manufactured. Thus, even an honestly made claim may not be sufficient to constitute reasonable suspicion; a testifying police officer must then proceed to describe in detail the defendant's movement that aroused his suspicion; otherwise the reviewing court is unable to weigh the adequacy of the proffered claim. Also, a court reviewing reasonable suspicion must analyze the facts and not merely accept general claims of 'furtive movement'. Lewis Katz, *Ohio Arrest, Search and Seizure.* West Group, (1998), at 262." *State v. Taylor* (July 13, 1998), Stark App. No. 1997CA00321.

{¶ 50} "A furtive gesture may be defined as a situation where police see a person in possession of a highly suspicious object or some object which is not identifiable but which because of other circumstances is reasonably suspected to be contraband and then observe that person make an apparent attempt to conceal that object from police view. *State v. Allen,* Montgomery App. No. 23738, 2010–Ohio–3336." *State v. Abner*, Montgomery App. No. 24140, 2011-Ohio-4007. (Internal quotation marks omitted).

{¶ 51} We find appellant's movement as described by Officer Messer ambiguous; however when those actions are combined with the other factors we have previously discussed the combination clearly provided Officer Messer with a sufficient reason to justify a reasonable belief appellant was armed and presently dangerous.

{¶ 52} Accordingly, under the facts of this case, we find that Officer Messer's pat-down of appellant was legal.

{¶ 53} 4). Consent

{¶ 54} Appellant argues that the discovery of the drugs inside the van was the direct result of the illegal pat-down search and therefore any consent to enter the van was tainted by the prior illegal search and must be excluded from evidence. We disagree.

{¶ 55} No Fourth Amendment violation occurs when an individual voluntarily consents to a search. See *United States v. Drayton* (2002), 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); *State v. Comen* (1990), 50 Ohio St.3d 206, 211, 553

N.E.2d 640. In *Schneckloth,* the United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal. Id. at 227-228. See, also *State v. Fry*, 4th Dist. No. 03CA26, 2004-Ohio-5747 at ¶18.

{¶ 56} A warrantless search based upon a suspect's consent is valid if his consent is voluntarily given, and not the result of duress or coercion, either express or implied. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854, 862; and *State v. Danby* (1983), 11 Ohio App.3d 38, 463 N.E.2d 47. The voluntariness of consent is a question of fact to be determined from the totality of the circumstances. *Schneckloth*, supra*.* The burden of proving that the suspect voluntarily consented to the search rests upon the prosecution. *Schneckloth,* supra*; Danby, supra; Bumper v. North Carolina* (1968), 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; *State v. Hassey* (1983), 9 Ohio App.3d 231, 459 N.E.2d 573; and *State v. Pi Kappa Alpha Fraternity* (1986), 23 Ohio St.3d 141, 491 N.E.2d 1129.

{¶ 57} "Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave." *State v. Robinette* (1997), 80 Ohio St.3d 234, 685 N.E.2d 762, paragraph three of the syllabus. A suspect's knowledge of a right to refuse, however, "is not a prerequisite of a voluntary consent." *Schneckloth,* supra 412 U.S. at 234. Rather, it must be determined if a person felt compelled to submit to the officer's questioning in light of the police

officer's superior position of authority. *Robinette,* supra at 244–245, 685 N.E.2d 762. The ultimate issue in this determination is whether, at the point of the police officer's questioning, the individual was "seized" within the meaning of the Fourth Amendment.

{¶ 58} "The distinction between an 'encounter' and a 'seizure' is that 'a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' *United States v. Mendenhall* (1980), 446 U.S. 544, 554. In *Mendenhall,* the Supreme Court cited examples of circumstances indicating a seizure even where the person did not attempt to leave, including the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *State v. Pierce* (1998), 125 Ohio App.3d 592, 597, 709 N.E.2d 203. The State's burden is not satisfied by showing a mere submission to a claim of lawful authority. *State v. Robinette* at 243, 685 N.E.2d at 770.

{¶ 59} Officer Messer testified that appellant consented to the search of his pocket. Further he testified that appellant directed the officers to retrieve the receipt for the money from inside the van. Under the totality of the circumstances we find appellant's consent was freely and voluntarily given. Accordingly, no constitutional violation occurred.

{¶ 60} Accordingly, we overrule appellant's First and Third Assignments of Error.

II.

{¶ 61} In his Second Assignment of Error appellant argues that the trial court erred in not ordering all monies taken from appellant at the time of his arrest returned to him. We agree.

{¶ 62} The State cites *State v. Lolliock* (1982), 70 Ohio St.2d 23, 434 N.E.2d 723 and *State v. Jacobs* (1940), 137 Ohio St. 363, 30 N.E.2d 432 in support of the trial court's authority to keep a portion of the money seized to ensure payment of fines and court costs in the event appellant was later convicted. However, those cases rely upon statutes that have since been repealed.

{¶ 63} R.C. 2981.03(A)(4) provides for relief from seizure, as follows:

{¶ 64} "A person aggrieved by an alleged unlawful seizure of property may seek relief from the seizure by filing a motion in the appropriate court that shows the person's interest in the property, states why the seizure was unlawful, and requests the property's return. If the motion is filed before an indictment, information, or a complaint seeking forfeiture of the property is filed, the court shall promptly schedule a hearing on the motion, and at the hearing the person shall demonstrate by a preponderance of the evidence that the seizure was unlawful and that the person is entitled to the property. If the motion is filed by a defendant after an indictment, information, or a complaint seeking forfeiture of the property has been filed, the court shall treat the motion as a motion to suppress evidence. If the motion is filed by a third party after an indictment, information, or complaint seeking forfeiture of the property has been filed, the court shall treat the motion as a petition of a person with an alleged interest in the subject property, pursuant to divisions (E) and (F) of section 2981.04 of the Revised Code."

{¶ 65} Appellant filed a "Motion for Judicial Hearing to Determine whether the State's Continued Retention of Monies Seized from Him is Justified" on September 27, 2010. Further Appellant raised the issue in his "Motion to Suppress and For the Release of Illegally Seized Property" filed November 3, 2010.

{¶ 66} By Judgment Entry filed December 22, 2010 the trial court found, "the money taken from the defendant at the time of his arrest should be returned to the defendant with the exception of an amount of money to cover the maximum fine in the event of conviction."

{¶ 67} However, R.C. 2981.12(G) specifically states that "Any property forfeited under this chapter shall not be used to pay any fine imposed upon a person who is convicted of or pleads guilty to an underlying criminal offense or a different offense arising out of the same facts and circumstances." See, also, *State v. Cruise,* Summit App. No. 24832, 2009-Ohio-6795, at ¶ 20 (Dickinson, P.J., concurring) (noting that "Section 2981.13 lists the ways in which forfeited property 'shall' be used, and those uses don't include payment of court costs and attorney fees."). A trial court, therefore, cannot indirectly do what is directly prohibited or is controlled by statute. *State v. Jamison,* Montgomery App. No. 23211, 2010-Ohio-965 at ¶37.

{¶ 68} In *Jamison,* supra, the Court of Appeals for Montgomery County noted,

{¶ 69} "If the trial court concluded, as it appeared to do, that the money belongs to Jamison, the court should have ordered the money released to Jamison. The State or the Department of Rehabilitation and Corrections could then have executed against the property, pursuant to civil collection methods or under the procedures set forth in R.C. 5120.133. If the trial court intended for the property to be forfeited under R.C. Chapter

2981, the procedures in that chapter should have been followed. However, the court could not simply apply the money to fines or costs that are owed, without authority to do so." Id. at ¶ 38. See also, *State v. Williams,* Lucas App. No. L-10-1016, 2010-Ohio-5029 at ¶15; *State v. Cruise,* Summit App. No. 24832, 2009-Ohio-6795, *State v. Payne,* Warren App. No. CA2003-02-019, 2004-Ohio-1031. (Discussing former R.C. 2933.41 and R.C. 2933.43).

{¶ 70} In the case at bar, the trial court was without authority to retain monies to pay a fine or court costs in the event appellant was eventually convicted.

{¶ 71} For the foregoing reasons, we find appellant's Second Assignment of Error well-taken.

IV.

{¶ 72} In his Fourth Assignment of Error, appellant maintains that his convictions are against the weight of the evidence and are based upon insufficient evidence. We disagree.

{¶ 73} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown* (2010), --- U.S. ----, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (reaffirming this standard); *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010-Ohio-2720 at ¶68.

{¶ 74} *Jackson* thus establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. This means that a court of appeals may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial. Id. Rather, when "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume even if it does not affirmatively appear in the record that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, supra 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; see also *McDaniel,* --- U.S. ----, 130 S.Ct. at 673-674, 175 L.Ed.2d 582; *United States v. Nevils* (9th Cir 2010), 598 F.3d 1158, 1164.

{¶ 75} Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492 superseded by State constitutional amendment on other grounds as stated in *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668;  See, also *State v. Clay*, supra at ¶ 70.

{¶ 76} This second step protects against rare occasions in which "a properly instructed jury may * * * convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 317, 99 S.Ct. 2781, 61 L.Ed.2d 560. More than a "mere modicum" of evidence is required to support a verdict. Id. at 320, 99 S.Ct. 2781, 61 L.Ed.2d 560 (rejecting the rule that a conviction be affirmed if "some evidence" in the record supports the jury's finding of guilt). At this second step, however, a reviewing court may not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,'" *Jackson* at 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560, quoting *Woodby v. INS* (1966), 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362, only whether "*any*" rational trier of fact could have made that finding. *Jackson* at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *United States v. Nevills*, supra, 598 F.3d at 1164.

{¶ 77} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, *State v. Thompkins*, supra. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *State v. Thompkins*, supra, 78 Ohio St.3d at 387, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.

{¶ 78} In *Thompkins*, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; *State v. Miller* (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.

{¶ 79} In the case at bar, appellant was charged with possession of crack cocaine in violation of R.C. 2925.11(A) which states: "(A) No person shall knowingly obtain, possess, or use a controlled substance."

{¶ 80} The culpable mental state of "knowingly" is defined as follows: "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 81} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff* (2001), 145 Ohio App.3d 555, 563, 763 N.E.2d 695.

(Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel* (May 1, 1998), Montgomery App. No. 16221, (citing *State v. Elliott* (1995), 104 Ohio App.3d 812, 663 N.E.2d 412).

{¶ 82} R.C. 2925.01(K) defines possession as follows: " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D) (1).

{¶ 83} Possession may be actual or constructive. *State v. Haynes* (1971), 25 Ohio St.2d 264, 267 N.E.2d 787; *State v. Hankerson* (1982), 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery* (1976), 46 Ohio St.2d 316, 332, 348 N.E.2d 351. Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly,* 137 Ohio App.3d 134, 738 N.E.2d 93. Circumstantial evidence that the defendant was located in very close proximity to readily usable drugs may show constructive possession. *State v. Barr* (1993), 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247-248; *State v. Morales,* 5th Dist. No. 2004 CA 68, 2005-Ohio-4714 at ¶ 50; *State v. Moses,* 5th Dist. No. 2003CA00384, 2004-Ohio-4943 at ¶ 9. Ownership of the drugs need not be established for constructive

possession. *State v. Smith,* 9th Dist. No. 20885, 2002-Ohio-3034, at ¶ 13, citing *State v. Mann,* (1993) 93 Ohio App.3d 301, 308, 638 N.E.2d 585. Furthermore, possession may be individual or joint. *Wolery,* 46 Ohio St.2d at 332, 348 N.E.2d 351.

{¶ 84} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks* (1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492 at paragraph one of the syllabus. "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks*, 61 Ohio St .3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks,* 61 Ohio St.3d at 272, 574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, citing *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 331, 130 N.E.2d 820. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

{¶ 85} In the case at bar, the baggie containing crack cocaine was found in plain view on the center console of the van which appellant was driving. The bag was found on top of the receipt that appellant had directed the officers to retrieve from the van. Viewing the evidence in the case at bar in a light most favorable to the prosecution, we

conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of possession of crack cocaine.  We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support appellant's conviction.

{¶ 86} "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.

{¶ 87} Although appellant cross-examined the witnesses and argued that he did not know the drugs were in the van, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180.

{¶ 88} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP-739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v.*

*Raver,* Franklin App. No. 02AP-604, 2003- Ohio-958, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548; *State v. Burke,* Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), supra.

{¶ 89} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crime charged in the indictment.

{¶ 90} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.

{¶ 91} Accordingly, appellant's Fourth Assignment of Error is denied.

{¶ 92} The Judgment of the Court of Common Pleas, Richland County, Ohio is affirmed in part and reversed in part. We remand this cause to the trial court for further proceedings consistent with this opinion.

By Gwin, P.J.,

Hoffman, J., and Delaney, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO,                      :
                                    :
            Plaintiff-Appellee,     :
                                    :
                                    :
v.                                  :        JUDGMENT ENTRY
                                    :
CALVIN CALDWELL,                    :
                                    :
                                    :
            Defendant-Appellant.    :        CASE NO. 2011-CA-0024


For the reasons stated in our accompanying Memorandum-Opinion, we reverse in part, and affirm in part the judgment of the Richland County Court of Common Pleas and remand this cause to the trial court for further proceedings consistent with this opinion. Costs to be shared equally between the parties.


_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. PATRICIA A. DELANEY