THE STATE OF OHIO, APPELLANT, *v.* HARRIS, APPELLEE.

(No. 51543—Decided March 9, 1987.)

*John T. Corrigan,* prosecuting attorney, and *Robert Koeth,* for appellant.

*William Blake,* for appellee.

CORRIGAN, J. The defendant herein, David L. Harris, was arrested by the Cleveland police on May 31, 1985. On June 26, 1985, he was indicted on one count of carrying a concealed weapon.

On July 17, 1985, he entered a plea of not guilty.

On October 10, 1985, a hearing was held on the defendant's motion to suppress evidence seized by the police.

On January 24, 1986, the trial court granted the motion on the ground that the gun was illegally seized. The state appeals assigning one error for our review:

"The court erred in finding that there was not probable cause in stopping the defendant's car and subsequently doing a limited search of the front seat."

The testimony at the hearing established the following.

Officer Rudy Popovich, a nineteen-year veteran of the Cleveland Police Department, testified first. He stated that on May 31, 1985 he and his partner were assigned to a high crime area in an unmarked car. They observed a yellow car pulling around a corner peeling its tires. As this constituted a violation of a city ordinance, they pursued the car with their siren going.

After exiting their vehicle, Popovich approached the driver's side, while his partner remained at the rear passenger portion of the car. He asked for a driver's license and that the driver step out of the car. Neither car door was operable, so the driver climbed out through the window. The defendant presented an expired driver's license. Popovich walked back towards the patrol car, turned and saw that his partner had entered the car through the passenger window. When his partner came out, he had a loaded revolver in his hand. The defendant stated that the gun was his. He had gone out, with the gun, to find a co-employee who had taken his paycheck.

Officer Thomas Donelon, the partner, took the stand next. He stated they observed the defendant squealing his tires and set out to pursue him. He stated that the defendant's vehicle was travelling rather fast and they had a difficult time keeping up with him. He observed the defendant, a large man, climb quickly out of the car window. He looked in the car because his suspicions were aroused. The defendant had made a movement with his shoulders when he first pulled over. Further, the rapidity with which he got out of the car raised his suspicions. He saw the handle of a gun sticking out from under the driver's seat.

The defendant took the stand next. His testimony contradicted that of Donelon, stating that the officer searched under the front seat of the car until he found the gun.

The trial court granted the motion to suppress and the state appeals.

We are compelled to find that the trial court erred in granting the motion to suppress and therefore reverse.

This court has noted that under the circumstances presented here, the state need not establish probable cause to search the defendant's automobile. Rather, the question is whether the limited search conducted by Officer Donelon was justified. See *State* v. *Attaway* (July 7, 1977), Cuyahoga App. No. 37202, unreported. Situations such as this require the application of the principles enunciated in *Terry* v. *Ohio* (1968), 392 U.S. 1, 44 O.O. 2d 383. *Id.* Thus, contrary to the trial court's position, probable cause was not essential to sustain the validity of the search.

In applying the *Terry* principles, the Ohio Supreme Court has held that "[w]here a police officer stops and approaches a motor vehicle at night for a traffic violation and sees the driver, while exiting the car, furtively conceal something under the front seat, a limited search of that area is reasonable for the purpose of the officer's protection. * * *" *State* v. *Smith* (1978), 56 Ohio St. 2d 405, 10 O.O. 3d 515, 384 N.E. 2d 280, syllabus.

This court has reversed the granting of a motion to suppress under circumstances quite similar to this. In *State* v. *Romano* (Nov. 18, 1982), Cuyahoga App. No. 44820, unreported, police officers observed a car proceed left of center and then execute an improper turn. One of the officers observed the driver bend down as they pulled him over. The officers approached the car to question him. He got out of the car. One of the officers approached the passenger side and looked in the window and observed a plastic bag containing pills on the "front" floor of the driver's side; he then found a loaded revolver under the driver's side of the front seat. This court reversed the suppression of that evidence on the authority of *State* v. *Smith, supra.*

Under the holding of *State* v. *Smith,* a limited search under the seat is justified even if the weapon was not visible to plain view. We find that the instant search was equally justified. The police officers observed the defendant commit a traffic violation and

began to pursue him. They had difficulty keeping up with him. As they pulled him over, one of the officers observed him make a movement with his shoulders. The entire incident occurred in a high crime area. Under the circumstances, we must conclude the trial court erred in suppressing the weapon. The judgment must be reversed and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PRYATEL, J., concurs.

MARKUS, C.J., dissents.

MARKUS, C.J., dissenting. I believe that the evidence adequately supported the court's findings and order, so I would affirm its ruling. Accordingly, I dissent.

## I

The two arresting officers and the defendant testified at the motion hearing. The officers said that they were patrolling a "high crime area" in the early evening, using an unmarked police vehicle. They observed the defendant's car "peel" its tires while making a right turn. Such sudden acceleration violates a local ordinance, so they followed the defendant's car and ultimately stopped it after activating their siren.

One officer approached the driver's window and asked the defendant for identification. The defendant was alone in the car. When the defendant produced an expired driver's license, the officer requested him to leave the car. The defendant explained that the car doors were inoperable, so he crawled out through the driver's window. The officer then accompanied the defendant to the rear of the car for further discussion.

Meanwhile, the second officer approached the passenger side of the car. After the defendant left the car, this officer looked into the passenger window. He stated that he saw the handle of a gun protruding from under the driver's seat, next to a hump in the floor. Since he could not open the passenger door, the officer climbed into the car through the passenger window and recovered the gun. It contained six live rounds. The officers testified that the defendant told them it was his gun. When asked why he had it there, he reportedly said that he was looking for a man who had taken his paycheck. They then arrested him.

The defendant testified that he owned the gun. He stated that he placed it six to eight inches under the driver's seat before he went to work that morning. He had intended to take it to his brother-in-law after work. He said that he told the officer he was then trying to find a co-employee friend who had mistakenly taken his pay envelope.

The defendant denied that he had been speeding or had "peeled." He disputed the officer's testimony that the gun was visible from the officer's position outside the passenger window. He asserted that the seat and accumulated rubbish on the car's floor obstructed the officer's ability to see it there. He also stated that he saw and heard the officer searching under the passenger seat before he searched under the driver's seat. At the conclusion of the hearing, the court commented:

"* * * [T]he biggest problem in this case was the credibility of the officers as to whether or not, number one, the officer who said he approached the car from the passenger's side really saw in plain view the handle of the gun, which he stated was up against or close to the hump on the driver's side of the car.

"* * *

"The testimony is quite clear that * * * neither of the officers was con-

cerned or had reasonable cause to believe that a felony was or had been committed.

"* * *

"There was no testimony from either of the officers that subsequent to the time that they stopped the vehicle, that they were in fear of any bodily harm."

II

The state argues that the officer could properly search the automobile after validly stopping it, or seize the gun after lawfully observing it in plain view.

The police had authority to stop the defendant's car in order to issue a traffic citation, after they observed him "peeling." Sections 431.36 and 403.99 of the Cleveland Codified Ordinances; R.C. 2901.02(G) and 2935.26. They then had authority to request him to produce his driver's license and to exit his car. R.C. 4507.35; *Pennsylvania* v. *Mimms* (1977), 434 U.S. 106, 111. When they discovered that his license had expired, they had authority to arrest him. See R.C. 4507.02, 4507.99 and 2935.03(A). However, they apparently chose not to arrest him until they found the disputed gun.

The police could lawfully search the automobile's passenger compartment without a warrant (1) as an incident to a custodial arrest, (2) with probable cause to believe they would find contraband when exigent circumstances justified a warrantless search, or (3) with reasonable grounds to believe that the defendant might endanger them by gaining access to a weapon, during their investigative stop. See *Michigan* v. *Long* (1983), 463 U.S. 1032, 1049; *New York* v. *Belton* (1981), 453 U.S. 454, 460. Additionally, the officer could properly enter the car to seize the gun as contraband, if he saw it in plain view from outside the vehicle. *Colorado* v. *Bannister* (1980),

449 U.S. 1, 3-4; see *Texas* v. *Brown* (1983), 460 U.S. 730, 741-743.

The officers could search the automobile, when they stopped it to issue a traffic citation, only if they reasonably feared for their safety. *Michigan* v. *Long, supra.* They could not conduct a "*Terry*-type" search merely because they suspected that they would find contraband. See, *e.g., Sibron* v. *New York* (1968), 392 U.S. 40, 44 O.O. 2d 402.

In this case, one officer indicated no fear of the defendant. The other officer testified only that he was "suspicious" about the defendant's movements. He did not indicate what suspicions were aroused. Thus, the court could reasonably find that the policemen did not fear for their safety, but were conducting a groundless search for contraband.

Similarly, I believe the court could reasonably reject the officer's testimony that the gun was visible from outside the car. As a reviewing judge, I would not substitute my view of the evidence for the trial court's. I would affirm the court's order.