[Cite as *State v. Caplinger*, 2013-Ohio-5675.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. CT2013-0018 |
| | : | |
| KYLE H. CAPLINGER | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Muskingum County Court of Common Pleas, case no. CR2012-0259

JUDGMENT:     REVERSED AND REMANDED

DATE OF JUDGMENT ENTRY:     December 10, 2013

APPEARANCES:

For Plaintiff-Appellee:                           For Defendant-Appellant:

D. MICHAEL HADDOX                     JAMIE WILLIAMS
MUSKINGUM CO. PROSECUTOR      WILLIAMS LAW, LLC
ROBERT L. SMITH                           323 Main St.
27 N. Fifth St.                            P.O. Box 53
Zanesville, OH 43701                   Duncan Falls, OH 43734

*Delaney, J.*

{¶1}   Appellant Kyle H. Caplinger appeals from the decision of the Muskingum County Court of Common Pleas overruling his motion to suppress and from his subsequent conviction and sentencing upon one count of carrying a concealed weapon. Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶2}   This case arose on November 29, 2012 as Ptl. Travis Groves was on routine patrol in the city of Zanesville.  Around 2:17 a.m. Groves was dispatched to a Starfire Gas Station at 727 Pershing Road for a shoplifting complaint.  The clerk said a black male wearing a gray "hoodie" (hooded sweatshirt) had entered the store and shoplifted two cans of pop and a cigar.  The suspect left the store and headed eastbound toward the Coopermill Manor area.  Groves stated police receive many calls to the Coopermill Manor neighborhood for crimes such as domestic violence, drug activity, and firearms violations, and an officer was once shot there.

{¶3}   Groves drove westbound on Pershing Road and turned onto Cliffwood Avenue, hoping to intercept the suspect.  As he approached the intersection of Shinnick Circle and Cliffwood Avenue, he observed a car stopped in the intersection.  Groves saw a person get out wearing a black hoodie. Groves apparently connected this individual with the shoplifting report: he testified it is his experience that shoplifters will leave a store and run to cars left parked a short distance away.

{¶4}   The car stopped in front of 758 Cliffwood Avenue and then pulled away. Groves watched the individual, later identified as appellant, exit the car and walk to the front door of an apartment as Groves pulled up.  Appellant stood on the front porch and

opened the screen door as Groves exited his cruiser. Groves noted appellant was wearing a purple and yellow hoodie. Groves testified, "So at that point I knew I didn't have a theft suspect." (T. 7). He also stated appellant did not appear to be engaged in any criminal activity such as breaking into the apartment. (T. 15).

{¶5} Groves continued, however, to watch appellant because appellant "flinched" when he noticed Groves watching him and looked "nervous, shocked, [and] surprised." Groves also observed a bulge in the front pocket of appellant's hoodie. He believed appellant positioned his body on the front porch as though he was attempting to conceal the front of his body. Groves found it noteworthy that appellant "bladed" his body away from him two or three times.

{¶6} Groves asked appellant if he would step off the porch to speak to him; appellant asked why but walked toward the officer, who could now clearly see a bulge in the front pocket of appellant's hoodie. Once appellant stepped off the porch, Groves touched the bulge, reportedly for officer safety purposes, and recognized the outline of a firearm. Groves placed appellant in handcuffs and retrieved a firearm from the front pocket of appellant's hoodie, later identified as a .22 caliber semi-automatic pistol.

{¶7} Appellant was charged by indictment with one count of carrying a concealed weapon pursuant to R.C. 2923.12(A)(2), a felony of the fourth degree. Appellant entered a plea of not guilty and filed a motion to suppress on the basis Groves had no reasonable suspicion to stop him and pat him down. A hearing was held on February 8, 2013, and the trial court overruled the motion to suppress from the bench at the conclusion of the hearing.

{¶8}   Appellant subsequently changed his plea to one of no contest and was found guilty as charged.  The trial court sentenced him to a term of two years of community control.  Appellant now appeals from the judgment entries of his conviction and sentence.

{¶9}   Appellant raises one assignment of error:

## ASSIGNMENT OF ERROR

{¶10} "I.  THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED DEFENDANT'S MOTION TO SUPPRESS IN THAT LAW ENFORCEMENT DID NOT HAVE REASONABLE SUSPICISION (*sic*) THAT DEFENDANT-APPELLANT WAS INVOLVED IN CRIMINAL ACTIVITY TO WARRANT CONDUCTING A TERRY STOP AND TERRY FRISK AND THAT DEFENDANT WAS ILLEGALLY SEARCHED AND SEIZED IN VIOLATION OF THE FOURTH AMENDMENT."

## ANALYSIS

{¶11} In his sole assignment of error, appellant argues the trial court erred in overruling his motion to suppress.  For the following reasons, we agree, and therefore we reverse the judgment of the trial court.

{¶12} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact.  *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998).  During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility.  *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996).  A reviewing court is bound to accept the trial court's findings of fact if they are

supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶13} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra.

{¶14} Finally, as here, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

{¶15} In his sole assignment of error, appellant asserts Groves' stop and subsequent pat-down violated the principles set forth in *Terry*. The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering

them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An investigative stop, or Terry stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 889 (1968). Because the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In *Terry*, the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, *State v. Chatton*, 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984).

{¶16} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991); *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the United States has re-emphasized the importance of reviewing the totality of the circumstances in making a reasonable-suspicion determination:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see

whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.

*United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct.744, 151 L.Ed.2d 740 (2002), citing *United States v. Cortez*, 449 U.S. 411, 417–418 (1981).

{¶17} The Ohio Supreme Court in *Bobo*, supra, noted several factors in determining whether a totality of the circumstances support a finding of reasonable suspicion: the reputation of the area for criminal activity, the officer's experience with drug transactions, the officer's familiarity with the area and how drug transactions occurred there, the officer's perception of the scene, the officer's observation of furtive movements, and the fact that it was night. 37 Ohio St.3d at 179–180. See, also, *State v. Ward*, 80 Ohio App.3d 701, 703, 610 N.E.2d 579 (8th Dist.1992); *State v. Victor*, 76 Ohio App.3d 372, 374–375, 601 N.E.2d 648 (8th Dist.1991). There is some testimony in the record that the Coopermill Manor area is known as a high-crime area, but we note "* * * the fact that the area may be characterized as a 'high crime' area cannot furnish a reasonable suspicion when the activities of the individuals as observed by the police are

themselves unexceptional." *State v. Caldwell*, 5th Dist. Richland No. 2011-CA-0024, 2011-Ohio-5429, ¶ 33, appeal not allowed, 131 Ohio St.3d 1459, 2012-Ohio-648, 961 N.E.2d 1137, certiorari denied, 133 S.Ct. 123, 184 L.Ed.2d 27 (2012), citing *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *State v. Carter,* 69 Ohio St.3d 57, 65, 1994–Ohio–343, 630 N.E.2d 355.

{¶18} Groves' investigation of appellant began with his hunch that something was "not normal" about appellant's behavior due to appellant "blading" his body away from the officer. (T. 15). Generally, a hunch is not an acceptable basis for an intrusion into protected rights. *State v. Rucker*, 63 Ohio App.3d 762, 764, 580 N.E.2d 59 (8th Dist.1990), per curiam. If the officer can articulate more factors that weighed in his decision to stop the suspect, however, those factors go to the nebulous "totality of the circumstances" we are charged with weighing. Furtive movement alone, however, is not enough. As we have previously noted, "[t]he courts in this State have held such general claims of furtive movement, standing alone, insufficient to render an officer's suspicions about criminal activity or the possession of weapons reasonable." *State v. Taylor*, 5th Dist. Stark No. 1997CA00321, 1998 WL 429917, (July 13, 1998), *3, appeal not allowed, 84 Ohio St.3d 1432, 702 N.E.2d 1212 (1998), citing *State v. Chandler*, 54 Ohio App.3d 92, 97, 560 N.E.2d 832 (8th Dist.1989); *State v. Bird*, 49 Ohio App.3d 156, 551 N.E.2d 622 (11th Dist.1988); *State v. Jackson*, 52 Ohio App.3d 39, 556 N.E.2d 223 (8th Dist.1989); *State v. Harris*, 36 Ohio App.3d 106, 521 N.E.2d 835 (8th Dist.1987); *State v. Armstrong*, 103 Ohio App.3d 416, 659 N.E.2d 844 (9th Dist.1995).

{¶19} Groves' testimony that appellant was "acting suspicious around a residence that he may or may not live there" and "his behavior was just not normal" (T.

15) points to a generalized hunch, rather than a specific, articulable suspicion of criminal activity. *State v. Lynch*, 2nd Dist. Montgomery No. 17028, 1998 WL 288936, (Jun. 6, 1998), * 4. As determined by the *Bobo* court, a mere furtive movement, standing alone, does not establish reasonable suspicion to stop a person; however, furtive movements may be considered along with the totality of other circumstances to conclude that an investigative stop was proper. *State v. Armstrong*, supra, 103 Ohio App.3d at 422, citing *Bobo,* supra, 37 Ohio St.3d at 179–180.

{¶20} In this case, therefore, we have reviewed the record to determine whether the totality of the circumstances supports Groves' investigative stop of appellant, and we determine it does not. Groves acknowledged he realized appellant was not the shoplifting suspect, appellant did not appear to be engaged in any criminal activity, and virtually the only suspicious activity the officer articulated was "blading" his body away from the officer's view. We find this testimony insufficient to conclude the stop of appellant was proper.

{¶21} Appellant's sole assignment of error is therefore sustained, and the trial court's order overruling his motion to suppress is reversed.

## CONCLUSION

{¶22} For the foregoing reasons, appellant's sole assignment of error is sustained and the judgment of the Muskingum County Court of Common Pleas is reversed. This matter is remanded for further proceedings consistent with this opinion.

By: Delaney, J. and

Farmer, P.J.

Wise, J., concur.

_____

HON. PATRICIA A. DELANEY

_____

HON. SHEILA G. FARMER

_____

HON. JOHN W. WISE