Baldwin, J.
{¶ 1} Appellant, Christopher Reece, appeals from the Municipal Court of Delaware County's December 28, 2016 decision that the arresting officer was justified in conducting field sobriety tests because the evidence supported a finding of reasonable suspicion that the appellant was driving while impaired. Appellee is the State of Ohio.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
{¶ 2} On August 26, 2016, at approximately 1:46 a.m., appellant left a bar on Sancus Boulevard after consuming a "couple" beers, and made a very wide right turn into the leftmost lane of Sancus Boulevard heading southbound. Trooper Rueda noticed his behavior and executed a U-turn. She believed he may be exceeding the speed limit and, through the use of a radar gun, she was able to determine that the appellant was traveling 45 mph in a 35 mph zone. She stopped the appellant for the traffic violation.
{¶ 3} After the appellant stopped, the trooper noticed that he appeared to lose his balance as he dismounted from his motorcycle. Despite the fact that he was outdoors and had been riding a motorcycle at 45 mph, the trooper detected a strong odor of alcohol about him. This odor of alcohol remained strong throughout her contact with the appellant. She also saw that his eyes were glassy and bloodshot. In an exchange with the appellant she learned that he had just left Rude Dog, a local bar, and that he had "a couple of beers." Based upon her observations and appellant's admissions, she administered field sobriety tests and, subsequent to the field sobriety tests, arrested appellant. He was charged with violation of R.C. 4511.19 (A)(1)(a), *1289 4511.19 (A)(1)(d) (O.V.I. per se), and a charge of Speeding under 4511.21.
{¶ 4} Appellant filed a motion to suppress evidence resulting from the traffic stop pursuant to Crim.R. 12(C). Appellant contended that the state failed to establish reasonable suspicion to conduct the field sobriety tests, that scoring of the field sobriety tests was done incorrectly, that the state did not establish probable cause for his arrest and that the Breathalyzer test was not valid.
{¶ 5} The trial court conducted a hearing on the motion to suppress the evidence on December 6, 2016. Prior to the hearing, the parties stipulated that the traffic stop was proper because the appellant exceeded the speed limit. The parties stipulated other issues not relevant to the assignment of error. After receiving testimony from the trooper, the trial court overruled appellant's motion to suppress.
{¶ 6} On February 22, 2017, appellant amended his plea to no contest to the charge under R.C. 4511.19 (A)(1)(a) and the balance of the charges were dismissed. The trial court found the appellant guilty and appellant filed a timely notice of appeal with regard to the Court's finding regarding the issue of reasonable suspicion that the appellant was under the influence of alcohol.
{¶ 7} Appellant submits one assignment of error:
{¶ 8} I. THE TRIAL COURT ERRED IN FINDING THE TROOPER HAD REASONABLE SUSPICION TO EXPAND THE SCOPE OF APPELLANT'S STOP TO INCLUDE FIELD SOBRIETY TESTS.
{¶ 9} The appellant limits his appeal to the trial court's holding that Trooper Rueda had reasonable suspicion that appellant was under the influence of alcohol. Appellant contends the facts do not support reasonable suspicion and that, therefore, the administration of field sobriety tests was an improper expansion of the detention of appellant. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. See State v. Fanning (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583 ; State v. Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141 ; State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 ; State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906 ; State v. Guysinger (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. The United States Supreme Court has held that "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." Ornelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911. Therefore we will review the appellant's assignment of error de novo.
{¶ 10} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews , 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991) ; State v. Bobo , 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the United States has re-emphasized the *1290 importance of reviewing the totality of the circumstances in making a reasonable-suspicion determination:
When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. United States v. Arvizu , 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), citing United States v. Cortez , 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).
State v. Caplinger , 5th Dist. Muskingum No. CT2013-0018, 2013-Ohio-5675, 2013 WL 6834807, ¶ 16.
{¶ 11} Appellant conceded that the traffic stop was justified, but argued that there was not sufficient evidence to justify the continued detention and the conduct of field sobriety tests. In analyzing the facts presented, we accept the template set forth by the Supreme Court of Ohio in State v. Batchili , 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, paragraph two of the syllabus: "The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop." The intrusion on the drivers' liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion the driver is under the influence of alcohol in order to conduct a field sobriety test. State v. Knox , Greene App. No. 2005-CA-74, 2006-Ohio-3039, 2006 WL 1661628. See also, State v. Bright , 5th Dist. Guernsey App. No. 2009-CA-28, 2010-Ohio-1111, 2010 WL 1035466.
{¶ 12} A request made of a validly detained motorist to perform field sobriety tests is generally outside the scope of the original stop, and must be separately justified by other specific and articulable facts showing a reasonable basis for the request. State v. Albaugh , 5th Dist. Tuscarawas No. 2014 AP 11 0049, 2015-Ohio-3536, 2015 WL 5096900, ¶ 18, quoting State v. Anez (2000), 108 Ohio Misc.2d 18, 26-27, 738 N.E.2d 491.
{¶ 13} In the case at bar, the totality of the circumstances provided the Trooper a "particularized and objective basis" for suspecting the appellant was impaired by alcohol. The Trooper first noticed the appellant when he made an unusual right turn, placing him in the far left lane of the road rather than the right lane as might normally be expected, and then he proceeded to exceed the speed limit by approximately 10 mph. The time of the offense, 1:46 a.m., appellant's admission of recently consuming alcohol at a local bar, and his apparent difficulty dismounting his motorcycle are additional relevant facts. The Trooper noticed that appellant had glassy, bloodshot eyes and a strong odor of alcohol even though he was driving 45 mph outdoors. All of these details, in the context of the trooper's training and experience, provide a sufficient basis for a conclusion that the trooper was warranted in having reasonable suspicion the appellant had violated the Revised Code. In fact, the evidence provided by the totality of the *1291 circumstances in this case exceeds what we have found necessary to support reasonable suspicion in other cases.
{¶ 14} This Court has held that "[I]n Ohio, it is well settled that, "[w]here a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists." (citations omitted) State v. Smith , 5th Dist. Licking No. 09-CA-42, 2010-Ohio-1232, 2010 WL 1138830, ¶ 34. The facts of this case fit precisely within the holding of Smith and the cases cited by the trial court in its decision. Trooper Rueda testified that appellant had glassy and bloodshot eyes, that she noticed a strong odor of alcohol and that the appellant admitted to consuming alcohol. Those facts, combined with the wide right turn, excessive speed, and the admission that appellant had just left a bar, provide abundant evidence from which reasonable suspicion can be derived.
{¶ 15} Appellant cites the Sixth District Court of Appeals holding in Whitehouse v. Stricklin , 6th Dist. Lucas No. L-10-1277, 2012-Ohio-1877, 2012 WL 1493830 in support of his argument that the facts are insufficient to provide reasonable suspicion of the commission of a crime. That case is distinguishable in that the odor of alcohol about appellant in that case was described as slight, whereas the trooper in the case at bar described the odor as strong. This distinction is significant because the Sixth District Court of Appeals has held that the strong odor of alcohol and an admission of consumption of alcohol are sufficient to justify administration of field sobriety tests. "These two factors, perceived * * * during the initial stop, created a reasonable suspicion that appellant's blood-alcohol level was over the proscribed limits and justified field sobriety tests." State v. Beeley , 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, 2006 WL 2640228, ¶ 18. Consequently, following the precedent of the Sixth District Court of Appeals would not alter our analysis or conclusion.
{¶ 16} Appellant refers to cases cited in Stricklin , State v. Spillers , (Mar. 24, 2000), 2d Dist. 1504, 2000 WL 299550, and State v. Dixon (Dec. 1, 2000), 2d Dist. No. 2000-CA-30, 2000 WL 1760664, but those cases provide no support for appellant. The Second District "has repeatedly held that a strong odor of alcohol alone is sufficient to provide an officer with a reasonable, articulable suspicion of driving under the influence." (Citations omitted) State v. Louis , 2nd Dist. Montgomery No. 27268, 2017-Ohio-8666, 2017 WL 5629571, ¶ 33 The Second District would presumably not reach a different result in this case as the trooper has testified that appellant had a strong odor of alcohol about him even though he was on a motorcycle and not enclosed in vehicle.
{¶ 17} Based upon the totality of the circumstances, we find Trooper Rueda relied upon specific, articulable facts giving rise to a reasonable suspicion appellant was driving under the influence, that an extension of the initial detention for the performance of field sobriety testing was justified, and the ruling of the trial court was correct.
{¶ 18} The assignment of error is denied.
{¶ 19} The judgment of the Delaware Municipal Court is affirmed.
{¶ 20} The costs assessed to appellant.
Delaney, P.J. and John Wise, J. concur.