[Cite as *State v. Such*, 2018-Ohio-1264.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | Case No. 17-CA-77 |
| | : | 17-CA-78 |
| ADAM SUCH | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County Municipal Court, Case No. 17-TRC-02590

JUDGMENT:                        AFFIRMED

DATE OF JUDGMENT ENTRY:      March 30, 2018

APPEARANCES:

For Plaintiff-Appellee:                       For Defendant-Appellant:

J. MICHAEL KING                           KEVIN J. GALL
Assistant Law Director                    Burkett & Sanderson, Inc.
City of Newark                               73 North 6th St.
40 West Main St., 4th Floor             Newark, OH 43055
Newark, OH 43055

*Delaney, J.*

{¶1} Appellant Adam Such appeals from the September 5, 2017 Judgment Entry of Conviction of the Licking County Municipal Court, incorporating the June 27, 2017 Judgment Entry overruling his motion to suppress. Appellee is the state of Ohio.

{¶2} Two appeals, Licking County case numbers 17-CA-77 and 17-CA-78, are hereby consolidated and resolved with the single opinion infra.

## FACTS AND PROCEDURAL HISTORY

{¶3} This case arose on March 11, 2017, around 4:00 p.m., when Trooper Vogelmeier of the Ohio State Highway Patrol was monitoring traffic from a stationary location on Interstate 70 near mile post 132 in Licking County. Vogelmeier has been a trooper for 5 years and is trained and certified in the investigation of impaired drivers using standardized field sobriety tests pursuant to the National Highway Traffic Administration (NHTSA) Standards and Advanced Roadside Impaired Driving Enforcement (ARIDE). Vogelmeier is experienced in recognizing and apprehending drivers under the influence of alcohol and other drugs.

{¶4} On this date, Vogelmeier watched traffic moving westbound and checked speed with a laser device. He observed a vehicle operated by appellant in the right lane. The trooper watched the vehicle leave its lane by a "substantial distance;" in addition, the vehicle traveled 52 m.p.h. in a 70 m.p.h. zone and the passenger was not wearing a seat belt.

{¶5} Vogelmeier initiated a traffic stop and noted appellant was slow to pull over. The cruiser camera was activated along with the lights on the cruiser and the videotape of the stop was admitted as appellee's Exhibit 1 at the suppression hearing. The video

therefore does not capture the marked-lanes violation initially observed by Vogelmeier but does show appellant slowly moving within his lane at a slow speed and, after a delay, coming to a stop at a rest area.

{¶6} Vogelmeier approached the vehicle and asked appellant for his license and insurance. He noted a "very slight odor" of raw marijuana emanating from inside the vehicle. The eyes of both appellant and his passenger were very red and appellant's speech was slow and lethargic. Vogelmeier told appellant why he was stopped and appellant said he swerved "to avoid an oversize load," but Vogelmeier did not see an oversize load traveling west.

{¶7} Vogelmeier asked appellant to exit the vehicle based upon the totality of the circumstances: the marked-lanes violation, the slow speed, the fact that appellant was slow to stop and weaved within his lane, the red eyes, and the odor of marijuana. Vogelmeier placed appellant in the rear of the cruiser and he sat in the front, writing a seat belt ticket for the passenger.

{¶8} Vogelmeier testified that as he sat in the cruiser with appellant, he weighed whether he would ask appellant to submit to standardized field sobriety tests and/or search the vehicle. The latter would require him to request another unit to the scene and he considered doing so. He testified appellant was not behaving normally. As he spoke to appellant, he noticed his eyes were extremely bloodshot. At first, appellant's tone was "excited" but as the conversation went on, appellant became unusually lethargic, to the point that he seemed to be falling asleep in the back of the cruiser. The trooper asked appellant whether he would find any illegal substances in the vehicle and appellant replied, "Maybe a roach."

{¶9} Vogelmeier was not comfortable with permitting appellant to drive away because he doubted appellant's ability to safely operate the vehicle. He decided to further evaluate appellant by administering standardized and non-standardized field sobriety tests.

{¶10} On the horizontal gaze nystagmus test (HGN), Vogelmeier did not observe any clues indicating impairment, although he testified this result is not unusual for someone under the influence of a substance other than alcohol. The trooper did note that appellant's eyes were "half closed" as he administered the test. He asked appellant to recite the alphabet from the letter D to the letter N; appellant started with E and ended with Z. Appellant was asked to count backward from 52 to 38 and he was able to do so. On the walk-and-turn test, appellant exhibited seven out of eight possible clues, failing the test: he moved his feet to keep balance, started before the instructions were complete, stopped while walking to steady himself, did not touch heel to toe, raised his arms higher than six inches for balance, stepped off the line while walking multiple times, and took an incorrect number of steps. Appellant also failed the one-leg stand test by exhibiting two clues: he raised his arms greater than six inches for balance and put his foot down. Vogelmeier also administered a "modified Romberg (*sic*) test" in which appellant was instructed to stand with his feet together, tilt his head back slightly, and estimate the passing of thirty seconds. In Vogelmeier's estimation, appellant counted too fast.

{¶11} Based upon the clues of impairment he observed, Vogelmeier placed appellant under arrest. At the suppression hearing, he summarized that he believed appellant was under the influence of alcohol, marijuana, or possibly a narcotic because of the traffic violation, poor performance on the field sobriety tests, appellant's unusual

behavior and delayed reaction time, his "stiff and rigid movements," and swaying as though his legs were heavy.

{¶12} The cruiser video, appellee's Exhibit 1, captures the stop and audio of appellant's conversation with the trooper. The walk-and-turn test and one-leg stand test are completed on the video, as is the "Romberg test" and the arrest.

{¶13} On March 11, 2017 appellant was charged by Uniform Traffic Ticket with one count of O.V.I. pursuant to R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, and one count of driving in marked lanes pursuant to R.C. 4511.33, a minor misdemeanor. Appellant entered pleas of not guilty and moved to suppress evidence related to his warrantless arrest on the bases that the trooper lacked reasonable suspicion to detain appellant and probable cause to arrest him. Appellee responded with a memorandum in opposition and the matter proceeded to an evidentiary hearing. The trial court overruled the motion to suppress with a Judgment Entry dated June 27, 2017.

{¶14} On September 5, 2017, appellant changed his pleas of not guilty to ones of no contest, and the trial court found him guilty. Appellant was sentenced to, e.g., a jail term of six days with three of those days to be served in a driver-intervention program.

{¶15} Appellant now appeals from the judgment entry of conviction and sentence, and the trial court's decision overruling his motion to suppress.

{¶16} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶17} "THE TRIAL COURT COMMITTED HARMFUL ERROR IN DETERMINING THERE WAS REASONABLE SUSPICION TO REQUEST THE DEFENDANT-APPELLANT TO PERFORM FIELD SOBRIETY TESTS."

**ANALYSIS**

{¶18} In his sole assignment of error, appellant argues the trial court should have granted appellant's motion to suppress. We disagree.

{¶19} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶20} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra.

{¶21} Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994). In the instant case, appellant argues the trial court incorrectly decided the ultimate issue: whether Vogelmeier had reasonable suspicion to ask appellant to perform the field sobriety tests. The trial court found that Vogelmeier's reasonable suspicion was supported by the totality of the circumstances, and we agree. Our review of the record includes the transcript of the suppression hearing, at which Vogelmeier was the only witness, and appellee's Exhibit 1, the cruiser video.

{¶22} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Reece*, 5th Dist. Delaware No. 17 CAC 03 0019, 2018-Ohio-150, --N.E.3d--, ¶ 9, citing *State v. Andrews*, 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991); *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the United States has re-emphasized the importance of reviewing the totality of the circumstances in making a reasonable-suspicion determination:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective

basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), citing *United States v. Cortez*, 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

*State v. Reece*, 5th Dist. Delaware No. 17 CAC 03 0019, 2018-Ohio-150, --N.E.3d--, ¶ 10, citing *State v. Caplinger*, 5th Dist. Muskingum No. CT2013-0018, 2013-Ohio-5675, 2013 WL 6834807, ¶ 16.

{¶23} Appellant argues Vogelmeier did not have reasonable suspicion of further criminal activity beyond the traffic violation that would justify prolonging the traffic stop for the purpose of administering field sobriety tests.  We have previously used the template set forth by the Supreme Court of Ohio in *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, at paragraph two of the syllabus, to analyze the facts of a traffic stop: "The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop." The intrusion on a driver's liberty resulting from a

field-sobriety test is minimal, and the officer therefore need only have reasonable suspicion the driver is under the influence of alcohol or other drug in order to conduct a field-sobriety test. See, *State v. Knox*, 2nd Dist. Greene No. 2005-CA-74, 2006-Ohio-3039; see also, *State v. Bright*, 5th Dist. Guernsey No. 2009-CA-28, 2010-Ohio-1111.

{¶24} Requesting a validly-detained motorist to perform field sobriety tests is generally outside the scope of the original traffic stop, and must be separately justified by other specific and articulable facts showing a reasonable basis for the request. *State v. Albaugh*, 5th Dist. Tuscarawas No. 2014 AP 11 0049, 2015-Ohio-3536, ¶ 18.  In the instant case, we find the totality of the circumstances provided Vogelmeier a "particularized and objective basis" to suspect appellant was impaired, including the marked-lanes violation, the slow speed, the delay in pulling over, appellant's behavior, speech, and red eyes, and the odor of marijuana.

{¶25} Appellant cites our decision in *State v. Keserich*, 5th Dist. Ashland No. 14-COA-011, 2014-Ohio-5120, for the proposition that Vogelmeier did not observe enough indicators of impairment to establish reasonable suspicion.  In that case, we reversed the decision of a trial court overruling a motion to suppress.  Keserich was stopped for not having a light illuminating his rear license plate. The officer observed bloodshot and watery eyes, and the defendant admitted to having consumed two alcoholic beverages. Based on those facts alone, the officer requested that Keserich perform field sobriety tests.  Explicitly limiting our holding to the facts of the case, we found the bloodshot eyes could have been attributed to the fact that there were four or five other passengers in the car who were smoking. *Id.*, ¶ 9.  We concluded that the possible explanation for the bloodshot eyes, together with a stop based solely on an equipment violation with no

erratic driving, was not enough to form reasonable suspicion supporting a request to perform field sobriety tests. *Id.* We noted our conclusion was largely premised upon the equipment violation: "Of utmost significance to our decision is the fact the arresting officer did not observe any moving violation, let alone a de minimis one, regarding Appellant's operation of his vehicle." *Keserich*, supra, 2014-Ohio-5120 at ¶ 15.

{¶26} The instant case is distinguishable from *Keserich.* First, appellant was stopped for a traffic violation, not an equipment violation. Appellant acknowledged the violation when he told the trooper he swerved to avoid an oversize load, an explanation the trooper rejected. The totality of the circumstances beyond appellant's traffic violation, however, gave the trooper sufficient indicia of impairment to establish a reasonable suspicion to request appellant to submit to field sobriety testing. Although Vogelmeier smelled only a slight odor of raw marijuana, appellant admitted "there might be a roach" in the vehicle; his eyes were bloodshot and half-closed for most of the encounter; his reactions were slow; and his speech and behavior were unusually lethargic. Based on the totality of the circumstances, we find Vogelmeier had sufficient indicia of impairment to establish a reasonable suspicion to request appellant to submit to field sobriety testing. See, *State v. Strope*, 5th Dist. Fairfield No. 08 CA 50, 2009-Ohio-3849 ["moderate" odor of alcohol, red eyes, admission of consumption justified field sobriety tests]; *State v. Cook*, 5th Dist. Fairfield No. 06-CA-20, 2007-Ohio-707, ¶ 19 [odor of burnt marijuana alone with no erratic driving, but driver "need not display every possible indication of being under the influence in order for reasonable, articulable suspicion grounds to exist for the trooper to proceed with field sobriety testing"].

{¶27} We note our review of the record and videotape supports the trooper's testimony. Appellant has obvious, visible difficulty completing the walk-and-turn and one-leg stand tests.

{¶28} Based upon the totality of the circumstances, we find Vogelmeier "relied upon specific, articulable facts giving rise to a reasonable suspicion appellant was driving under the influence, that an extension of the initial detention for the performance of field sobriety testing was justified, and the ruling of the trial court was correct." *Reece*, supra, 2018-Ohio-150 at ¶ 17. Appellant's sole assignment of error is therefore overruled.

## CONCLUSION

{¶29} Appellant's sole assignment of error is overruled and the judgment of the Licking County Municipal Court is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.