[Cite as *State v. Doering*, 2025-Ohio-1297.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. Robert G. Montgomery, P.J. |
| Plaintiff - Appellee | : | | Hon. Kevin W. Popham, J. |
| | : | | Hon. David M. Gormley, J. |
| -vs- | : | | |
| | : | | |
| JOSEPH DOERING, | : | | Case No. 24-COA-025 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:              Appeal from the Ashland County
                                      Common Pleas Court, Case No.
                                      23CRI278


JUDGMENT:                             Affirmed


DATE OF JUDGMENT:                     April 10, 2025


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

ANDRES R. PEREZ                       CHRISTOPHER BAZELEY
ASHLAND COUNTY PROSECUTING            9200 Montgomery Road, Suite 8A
  ATTORNEY'S OFFICE                   Cincinnati, OH  45242
110 Cottage Street, Third Floor
Ashland, OH  44805

*Montgomery, J.*

**{¶1}** Joseph Doering, defendant-appellant appeals from the Ashland County Court of Common Pleas decision denying his motion to suppress drugs found in defendant-appellant's car. For the reasons below, we affirm.

## STATEMENT OF THE CASE

**{¶2}** On November 16, 2023, Joseph Doering ("appellant") was indicted on one count of Aggravated Possession of Drugs in violation of R.C. 2525.11, a felony of the fifth degree. On January 24, 2024, appellant filed a motion to suppress certain statements. On March 11, 2024, the trial court held the suppression hearing. At the hearing, Officers Osicka and Stormer of the Ashland Police Department testified. The parties stipulated to the admission into evidence the officers' body camera footage. On March 21, 2024, the court issued a lengthy decision denying Appellant's motion to suppress. On April 29, 2024, Appellant pled no contest to the indictment. On June 3, 2024, the court sentenced appellant to six months of imprisonment and two-year driver's license suspension. Appellant timely filed the instant appeal.

## STATEMENT OF FACTS

**{¶3}** The testimony and camera footage revealed the following facts. On October 25, 2023, Officer Osicka ("Osicka"), Officer Stormer ("Stormer") and K9 unit "Smokey" responded to a call regarding a vehicle parked in a BP gas station lot for several hours. At approximately 2:57 a.m., the officers arrived at the BP station, parked the police cruiser and approached the vehicle. Osicka initially approached the passenger side while Stormer approached the driver's side. Both officers testified that appellant was "sweating profusely," even through a sweatshirt despite the cold weather, acting erratically, had

"tremors," was speaking rapidly, and giving incoherent reasons as to why he was at the gas station.

{¶4} The officers obtained appellant's driver's license, called the information into dispatch, and after a minute or two, Stormer went to speak with the BP employee. Osicka remained with appellant and walked over to the driver's side of the vehicle. At this point, appellant remained inside his vehicle and told Osicka, without prompting, that "there is nothing illegal in the vehicle and [I am] … on probation and ha[ve] been clean." Tr. at p. 8. Osicka testified that based on his training and experience, appellant's behavior was indicative of narcotics usage.

{¶5} The video confirmed that appellant spoke rapidly, even stammering and stuttering throughout the interaction with the officers. Around 3:01 a.m., Osicka instructed appellant to "hang tight" while he discussed the situation and next steps with Stormer. Osicka returned to the vehicle and told appellant he must move his vehicle from the lot. Osicka and Stormer asked appellant for consent to search the vehicle; appellant refused consent and said he was going to "get going." Osicka asked appellant to step out of the vehicle so they could talk further; appellant agreed without hesitation. Stormer informed appellant they would be performing a K9 sniff, and the K9 would scratch his vehicle if drugs were detected.

{¶6} As appellant was exiting his vehicle, and prior to any Miranda warning, he admitted to having "drugs" in the car but did not, at that moment, indicate the type of drugs or the exact location. Appellant claimed he took the drugs away from a friend earlier that evening. Osicka patted down and handcuffed appellant while Stormer retrieved the K9. Osicka testified that as soon as an officer knows drugs are involved, his department's

standard procedure is to detain the individual in handcuffs and away from the vehicle – for everyone's safety. Stormer confirmed that "[f]or all my K9 sniffs I have all the occupants * * * step outside the vehicle and the vehicle gets turned off for the safety of the dog and the occupants removed to a safe place." Tr. at pp. 72-73.

{¶7} As Osicka is handcuffing appellant, but again prior to any Miranda warning, Osicka asked appellant if he had anything "on him" that would poke or stick the officer, what type of drugs were involved, if any drugs were "on" appellant's person, and the location of the drugs. Appellant admitted that "meth" was the drug in question; Osicka asked if the "meth" was on his person and appellant said "no". Osicka again asked the location of the drugs and appellant responded they were in his vehicle. Osicka asked where in the car and appellant gave random, non-responsive answers.

{¶8} After that interaction, Osicka gave appellant the Miranda warnings. The K9 simultaneously performed the sniff and eventually alerted the officers to the area near the passenger windshield. Appellant then admitted that the drugs were in his vehicle's glovebox and repeated the story that he took the drugs from a friend earlier that evening to avoid the friend using or overdosing. The officers opened the glovebox, discovered the suspected drugs and needles, and retrieved the contraband.

{¶9} On March 21, 2024, the court issued a lengthy decision denying appellant's motion to suppress any of appellant's statements. The trial court discussed the "classification" of police encounters in general. Initially, because the vehicle was parked in a gas station and was not a traffic stop, the encounter was consensual and did not implicate the Fourth Amendment's protection against unreasonable searches and seizures. However, once Osicka instructed appellant to "hang tight," the consensual

encounter became an "investigative" one.  At that point, the officers must have reasonable and articulable suspicion of wrongdoing to continue the detention. The trial court determined that the totality of circumstances warranted the officers' actions.  It stated:

> It was reasonable and prudent for the officers on the scene to elevate the encounter from a consensual to investigative encounter under the totality of these circumstances.  To simply ignore a person who demonstrated particularized and objective indications that he potentially used and/or possessed narcotics and send them down the road in a vehicle without further investigation would no doubt place the public in harm's way. Therefore, the Court finds no Fourth Amendment violation in the officers' escalation of the matter into an investigative encounter.

> Judgment Entry, March 21, 2024, pp. 7-8.

{¶10}  The trial court further concluded that no Miranda violation occurred.  At the time appellant was handcuffed, the officers specifically told him he was just being detained and was not being taken to jail at that time.  The court stated that the use of handcuffs as appellant exited his vehicle and prior to the K9 search was reasonable under the circumstances, the appellant had not been formally arrested, his freedom was not curtailed to the degree of a formal arrest (he was still able to walk around), and the questions asked of appellant were related to officer safety.  Importantly, prior to handcuffing *and after* the Miranda warning, appellant admitted drugs were in the vehicle. Indeed, after the warning, appellant continued to give "unprompted statements and answered the officers' questions."
Judgment Entry, pp. 9-10.

{¶11}  The court also concluded that because the K9 unit did a sniff during the reasonable detention, "the officers would have undoubtedly discovered the drugs regardless of the Defendant saying it was 'meth.'" Judgment Entry, p. 10.  Appellant timely filed the instant appeal and asserts the following assignment of error:

**{¶12}** "I. THE TRIAL COURT ERRED WHEN IT OVERRULED A MOTION TO SUPPRESS."

## STANDARD OF REVIEW

**{¶13}** "Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact." *State v. Durosko*, 2020-Ohio-3133, ¶ 15, citing *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *Durosko*, ¶ 15, citing *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact when supported by competent, credible evidence. *Durosko,* ¶ 15, citing *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). The appellate court must independently determine as a matter of law, whether the trial court's decision meets the applicable legal standard. *Durosko,* ¶ 15.

## ANALYSIS

**{¶14}** Appellant's sole assignment of error raises two separate arguments. First, appellant argues the officers had no reasonable justification to "extend" the initial consensual encounter to an investigative detention because reasonable suspicion did not exist.[1] Second, he argues that his "pre-Miranda" statements were the product of "custodial interrogation" and should have been suppressed.

---

[1] Appellant does not contest the trial court's conclusion that the initial encounter was consensual.

## Reasonable Suspicion to Extend Detention

{¶15} The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures. An officer may perform a brief investigative stop when the officer has a reasonable suspicion that a crime has occurred, is occurring, or is imminent. *Terry v. Ohio,* 392 U.S. I (1968). However, not every contact between a police officer and citizen implicates the Fourth Amendment. "Only when the officer, by means of physical force or show of authority, has in some way restricted the liberty of a citizen may we conclude that a 'seizure' has occurred." *State v. Berry*, 2018-Ohio-4791, ¶ 91, quoting *State v. Lopez*, 2nd Dist. Greene No. 94 CA 21, 1994 WL 527670 (Sept. 28, 1994), quoting *Terry*, *supra*, at 19, fn. 16.

{¶16} Ohio law recognizes three types of police-citizen encounters: consensual encounters, investigative (also known as *Terry* stops), and formal arrests. Berry, ¶¶ 21-22, citing *State v. Taylor*, 106 Ohio App.3d 741, 747-49, (1995). An investigatory detention is more intrusive than a consensual one, but less intrusive than a formal arrest. *Berry*, ¶ 25. The investigative detention is limited in both duration and purpose and may only last as long as it takes an officer to either confirm or dispel the officer's suspicions. *Id.*, citing *Taylor*, supra at 748. An investigative detention is valid if the officer had "reasonable and articulable" suspicions of criminal activity. *Id.* at 749. The police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion". *Berry, ¶ 25; State v. Hudson*, 2004-Ohio-3140, ¶ 17 (stating "[o]nce a police officer legitimately stops a vehicle for a traffic violation, the driver may be detained for only as long as the officer continues to have reasonable suspicion that there has been a violation of the law).

**{¶17}** Relatedly, the use of a drug detection canine does not generally constitute a "search", and prior to a canine sniff an officer is not required to establish either probable cause or a reasonable suspicion that drugs are concealed in the vehicle. *See Illinois v. Caballes*, 543 U.S. 405 (2005) (holding that when a lawful traffic stop was not improperly extended, another officer's arrival at scene while the stop was in progress and doing a K9 sniff around the exterior of the motorist's vehicle did not offend the driver's Fourth Amendment rights). An officer needs no suspicion or cause to run a dog around a stopped vehicle **if** the sniff is performed contemporaneously with legitimate activities associated with the traffic violation. *Id.*[2]; *Hudson*, ¶ 18 (finding that the record indicates the canine sniff occurred within the normal amount of time for issuing a citation for driving under a suspension, the offense for which Hudson was being cited, and did not violate the Fourth Amendment).

**{¶18}** Upon our review of the record, we agree with the trial court's finding that the encounter began as consensual and progressed to an investigative detention. Thus, the issue becomes whether the officers had reasonable and articulable suspicions of criminal activity to extend the detention. *State v. Hairston,* 2019-0hio-1622, ¶10. Reasonable suspicion is based on the totality of circumstances "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold". *Hairston,* ¶10, quoting *State v. Andrews,* 57 Ohio St.3d 86, 87-38 (1991).

---

[2] However, absent a reasonable suspicion of criminal conduct an officer may not extend an otherwise-completed traffic stop to conduct a canine sniff. *Rodriguez v. United States,* 575 U.S. 348 (2015); see also, "When a canine drug search is involved, the police must have a reasonable suspicion that a vehicle contains drugs to detain a suspect further while a drug-sniffing canine is brought to the scene." State v. *Ramos,* 2003–Ohio–6535, ¶¶ 10–13.

**{¶19}** This allows officers to draw from their experience and specialized training to make inferences from the cumulative information available to them that may not alert an average, untrained person. *State v. Reece,* 2018-Ohio-150, ¶ 10 (5th Dist.), quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002), citing *United States v. Cortez*, 449 U.S. 411, 417-418 (1981). And, although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *Arvizu,* at 273.

**{¶20}** Based on the facts of this case, we agree with the trial court and conclude that Osicka had reasonable and articulable suspicion to temporarily detain appellant and elevate the encounter from consensual to "investigative". Although appellant disputes the trial court's factual findings and claims his profuse sweating was due to pure nervousness rather than drug use, the trial court's findings are supported by competent, credible evidence and are entitled to deference. Appellant was sitting in his car in the gas station parking lot for several hours late at night (until 2:57 a.m. when the officers arrived). Upon approaching the vehicle, both officers noticed appellant sweating profusely - despite the cold weather - acting erratically, speaking rapidly and, at times, incoherently – providing narratives that did not make sense. Based on their training and experience, both officers suspected appellant was under the influence of narcotics. Osicka's suspicion was also heightened when appellant volunteered to him there was nothing illegal in the car and that he was on probation and was "clean."

**{¶21}** Then, after Osicka told him to "hold tight" so the officers could discuss next steps, the officers requested consent to search the vehicle, but appellant refused so they

asked appellant to exit his vehicle and decided to perform a K9 sniff. Upon exiting his vehicle, appellant told Osicka he had "drugs." The sniff was performed contemporaneously with the reasonable detention and alerted the officers to the presence of drugs. All of this happened within minutes.

{¶22} Under these facts and circumstances, reasonable and articulable suspicion existed that there were drugs and/or drug contraband either on appellant's person or inside his vehicle sufficient to warrant the investigative detention. The trial court specifically found the officers were credible witnesses and justified in their belief based on that training and experience. Even a reasonable person, without such training and experience, would be suspicious when confronted with these facts. As a result, the officers properly extended the initial consensual encounter to an investigative detention and did not violate appellant's rights under the Fourth Amendment.

## Miranda Warning

{¶23} In his second argument, appellant contends that his "pre-Miranda" statements, that he had "meth" in his vehicle, were the product of a "custodial interrogation" and should have been suppressed. *Miranda v. Arizona* (1966), 384 U.S. 436. In *Miranda,* the U.S. Supreme Court held:

> [W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. * * * He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires. * * * After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement.
>
> *Miranda v. Arizona,* 384 U.S. 436, 478-79 (1966).

**{¶24}** A statement obtained during a custodial interrogation, in the absence of the requisite warnings, is considered a product of coercive influences and compelled within the meaning of the Fifth Amendment to the United States Constitution. *State v. Roberts,* 32 Ohio St. 3d 225, 227 (1987), citing *Miranda* at 460-62. The *Miranda* Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way..." *Id.*, at syllabus. An individual is in custody if there is a formal arrest or restraint on freedom of movement as is associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983). Law enforcement engages in an "interrogation" if there is express questioning or words or actions reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301-302 (1980).

**{¶25}** Determining whether questioning is "a custodial interrogation requiring *Miranda* warnings demands a fact-specific inquiry that asks whether a reasonable person in the suspect's position would have understood himself or herself to be in custody while being questioned". *State v. Myers*, 2018-Ohio-1903, ¶ 57, quoting *Cleveland v. Oles*, 2017-Ohio-5834, ¶ 21. Thus, custodial interrogation is measured by an objective standard, not by the subjective understanding of the suspect. *State v. McDougald*, 2004-Ohio-4512, ¶ 16, citing *Miranda*, at 444. The relevant inquiry is whether a reasonable person in appellant's position would have believed he was not free to leave and forgo further questioning.

**{¶26}** Appellant cites a Seventh District case identifying the following factors to consider when determining whether a reasonable person would consider themselves in custody even if not in a police cruiser: 1) whether the subject was handcuffed at the time

the statement was made; 2) the number of police officers on the scene; and 3) how many times a specific question is asked. *State v. Withrow*, 2022-Ohio-2850, ¶ 45 (7th Dist.). Appellant argues the totality of the circumstances demonstrate that he reasonably understood he was in "custody" at the time he was "interrogated" by Osicka.

**{¶27}** Appellant points to the facts that two officers were present, a K9 sniff dog was present, Osicka instructed him to "hang tight" while he discussed the matter with Stormer, and a few minutes later, appellant exited his vehicle and was handcuffed. When Osicka was handcuffing appellant, he was also asking questions and appellant reported he had "meth". Osicka then asked if the "meth" was on his person and specifically asked the location of the drugs.

**{¶28}** The State counters that appellant's pre-*Miranda* statements were unprompted and noncustodial. Based on the sequence of events, we conclude that appellant's first comment - informing Osicka he had "drugs" - did not require a *Miranda* warning because appellant was not in custody or being interrogated by Osicka. At that moment, appellant was exiting his own vehicle, he was not in handcuffs, he was not under arrest, and his freedom of movement was not curtailed in any manner. After appellant gave this information, Osicka placed appellant in handcuffs while Stormer retrieved the K9 and began the sniff.

**{¶29}** The subsequent comments appellant made while being handcuffed and patted down, specifically that the drugs were "meth" and located in his vehicle, are arguably a closer call under the requisite *Miranda* analysis. However, because Osicka eventually gave the appropriate *Miranda* warning, and appellant continued to provide information to the officers *thereafter*, any prior *Miranda* violation was cured and did not

affect appellant's substantial rights or the outcome of the suppression hearing. In other words, even assuming (without deciding) the trial court erred in concluding no *Miranda* violation occurred, subsequent events cured any error and rendered it completely harmless. *McDougald*, ¶ 20 (finding harmless any error on the part of the trial court in not suppressing Defendant's earlier incriminating statement he made at the crime scene because he repeated the same information later); Crim. R. 52(A) (providing that any defect, irregularity, or variance which does not affect substantial rights shall be disregarded).

**{¶30}** Here, the record supports the trial court's findings that after Officer Osicka gave Miranda warnings, appellant repeated the narrative regarding the drugs in his vehicle and offered information to the officers. Because appellant's pre-Miranda statements are largely duplicative of his post-Miranda statements, suppression of those statements would not have affected the outcome of the case.

**{¶31}** Additionally, the K9 sniff alerted the officers to the presence of drugs and the approximate location. As stated above, the K9 sniff was performed during appellant's lawful detention. Thus, given the K9 alert as well as appellant's behavior, a reasonable person could conclude that appellant did in fact possess and had used drugs that night, without *any* admission from appellant. Overall, any error in admitting appellant's statements did not affect his substantial rights. Because the trial court properly denied appellant's motion to suppress, the sole assignment of error is overruled.

## CONCLUSION

**{¶32}** Appellant's sole assignment of error is overruled and the trial court's decision is affirmed in all respects.

By: Montgomery, P.J.

Popham, J. and

Gormley, J. concur.